**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**KIMBERLY ODEN, Individually and**
**on Behalf of All Others Similarly Situated**                                    **PLAINTIFF**

**VS.**                              **4:19-CV-00693-BRW**

**SHANE SMITH ENTERPRISES**                                              **DEFENDANT**

**ORDER**

Pending is Plaintiff's Motion to Approve Attorney Fees and Costs (Doc. No. 18). Defendant has responded and Plaintiff has replied.[1] For the reasons set out below, the motion is GRANTED IN PART and DENIED IN PART. Plaintiff's lawyers are entitled to $1,080 in lawyers' fees and $450 in costs from Defendant.

**I.    BACKGROUND**

Plaintiff filed this FLSA collective action on October 3, 2019, but never requested conditional certification. There was no discovery; only sporadic settlement negotiations. On September 17, 2020, Plaintiff filed a notice of settlement, and a few months later filed a Joint Motion to Approve Settlement. The settlement was approved and Plaintiff received $350 in liability damages from Defendant, after originally demanding $3,240. Unable to agree on lawyers' fees, Plaintiff filed a motion seeking $4,435 in fees and $450 in costs.

**II.   DISCUSSION**

The Fair Labor Standards Act allows for reasonable lawyers' fees upon successful litigation of the claim.[2] Congress included the fee-shifting language so citizens would have

---

[1]Doc. Nos. 23, 24.

[2]29 U.S.C.A. § 216 ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

1

access to the courts to enforce their federal rights.[3]  While that concept is good in theory, it has become apparent that, in practice, lawyers' fees are the driving force in many FLSA cases.[4]

The lodestar method is the "most useful starting point for determining the amount of a reasonable fee."[5]  It requires the court to consider "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[6]  Then, the court should "adjust the fee upward or downward on the basis of the results obtained."[7]  "[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."[8]  "A reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys."[9]

---

[3]*Morales v. Farmland Foods, Inc.*, No. 8:08CV504, 2013 WL 1704722, *5 (D. Neb. April 18, 2013) (The "purpose of the FLSA attorney's fee provision is to insure effective access to the judicial process," and "encourage the vindication of congressionally identified policies and rights.").

[4]See *Jones v. RK Enterprises of Blytheville, Inc.*, No. 3:13-CV-00252-BRW, 2016 WL 1091094, at *6 (E.D. Ark. Mar. 21, 2016), aff'd, 672 F. App'x 613 (8th Cir. 2016) ("The fact that a case involves fee shifting does not open the door to unwarranted billing that would otherwise never be incurred. Additionally, a lawyer is still required to do a cost-benefit analysis when considering whether to proceed to trial or settle a case, just as lawyer in a non-fee-shifting case would."); *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003) (holding that "an entitlement to attorney's fees cannot be a *carte blanche* license for Plaintiffs to outrageously and in bad faith run up attorney fees without any threat of sanction" after finding that the plaintiff "leveraged a small sum as a stepping-stone to a disproportionately large award of attorney's fees").

[5]*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[6]*Id*.

[7]*Wheeler v. Missouri Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003).

[8]*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551(2010) (emphasis in original).

[9]*Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991) (internal quotations omitted).

"An attorney[s'] fees award under a fee-shifting statute should be comparable to what is traditionally paid to attorneys who are compensated by a fee-paying client."[10]  Hours that were not "reasonably expended" must be excluded.[11]  "Cases may be overstaffed, and the skill and experience of lawyers vary widely.  Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."[12]

### A. Requested Hourly Rates

The Sanford Law Firm ("SLF") requests the following hourly rates in this case: $250 an hour (Josh Sanford); $200 an hour (Anna Stiritz); $150 an hour (Rebecca Matlock and Stacy Gibson); $100 an hour (Courtney Lowery) and $25 an hour (staff).[13]  According to the motion, SLF voluntarily reduced the rate to comply with my previous orders regarding its hourly rates. Based on a review of the submissions and my knowledge of the local prevailing rate, I find that the proposed rates are reasonable.  However, the "staff" work will not be billed to Defendant because their work involved only clerical activities.[14]

---

[10]*Morales,* 2013 WL 1704722, at *7 (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 287 (1989)).

[11]*Hensley*, 461 U.S. at 434.

[12]*Id.*

[13]Doc. No. 45.

[14]*Gough v. Apfel*, 133 F. Supp. 2d 878, 881 (W.D. Va.2001) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989) ("Purely clerical activities, regardless of who performs them, are considered overhead and are not compensable as EAJA attorney fees."); *Semler v. Berryhill*, No. 16-CV-2445 (TNL), 2018 WL 1512056, at *1 (D. Minn. Mar. 27, 2018) "Clerical activities include tasks such as filing documents, preparing and serving summons, preparing and serving a civil cover sheet, mailing items to the court or other parties, downloading and emailing documents, and scanning documents as well as preparing an itemized invoice for legal services.").

### B. Hours Expended

Now, I must consider the reasonableness of the hours expended. After conducting a self-audit, SLF seeks reimbursement for 36.5 hours of work. Although SLF removed some of the unnecessary oversight-billing, there is still plenty being claimed. As I[15] and other judges[16] have

---

[15] *Vines v. Welspun Pipes, Inc.*, No. 4:18-CV-00509-BRW, 2020 WL 3062384, at *6 (E.D. Ark. June 9, 2020) ("SLF can disagree with whether overstaffing and micro-managing cases is a reasonable business practice, but defendants should not pay for the costly practice. It appears to me that the only way to make the point that SLF will no longer be compensated for this inefficient practice is to impose a significant reduction in fees.").

[16] *Mya Hill-Smith v. Silver Dollar Cabaret, Inc., et al.*, No. 5:20-CV-5051; 2020 WL 4741917, at *3 (W.D. Ark. Aug. 14, 2020)."The Sanford Law Firm may choose to have Mr. Sanford personally oversee every aspect of run-of-the-mill motion practice requiring no court appearance, but it will not be permitted to pass the associated costs of doing so on to Defendants."); *Beasley v. Macuil's Tire & Serv. Ctr.*, LLC, No. 4:19-CV-00471-JM, 2020 WL 3472556, at *2 (E.D. Ark. June 25, 2020) ("The time records are replete with instances of objectionable billing practices, including an excess of intraoffice communications, duplicate document reviews by multiple lawyers, billing at lawyers' rates for clerical work, etc. The Court will not hold Defendants responsible for these billing practices."). *Murdock v. McNair*, No. 5:17-CV-05225, 2018 WL 6314569, at *1 (W.D. Ark. Dec. 3, 2018) ("Although the law firm has admittedly adopted a collaborative practice wherein more experienced attorneys mentor the more junior attorneys, *see id.*, it does not necessarily follow that the time spent by the senior attorneys mentoring Mr. Hoyt should have reasonably been passed on to the client and claimed in this fee request, nor does it follow that nine separate attorneys should have billed time to this rather uncomplicated wage-and-hour case."); *Davis v. Klenk*, No. 3:12-CV-115-DPM, 2012 WL 5818158, at *2 (E.D. Ark. Nov. 15, 2012) ("Involving two lawyers also ran the bill up some with needless coordination."); *West v. Zedric's LLC*, No. SA-19-CV-00556-FB, 2019 WL 6522828, at *6 (W.D. Tex. Dec. 3, 2019) ("Plaintiff's counsel assigned five lawyers to work on this case at various times, and this led to inefficiencies and duplication of work. Plaintiff's counsel has been warned about this type of duplicative billing in the past."); *Hays v. French Quarter Partners, LLC*, No. 6:15-CV-6065, 2016 WL 6518637, at *3 (W.D. Ark. Nov. 1, 2016) ("[T]here are multiple instances of duplicative work performed and excessive intra-firm communication in the itemized list provided by Plaintiff's counsel."); *Cook v. Beemac Foods, LLC*, No. 2:18-CV-02155, 2019 WL 2418753, at n.2 (W.D. Ark. June 10, 2019) (""These excessive intrafirm conferences and over staffed cases only serve the attorneys' invoices and take away from time that could be spent protecting the client's legal interests."); *Burchell v. Green Cab Co., Inc.*, No. 5:15-CV-05076, 2016 WL 894825, at *3 (W.D. Ark. Mar. 8, 2016) ("[T]ime spent on intra-firm communications was unnecessary and excessive" and much of the communication was "oversight" and "education" of a new lawyer.); *Bryan v. Mississippi County Arkansas*, No. 3:18-CV-00130-DPM, Doc. No. 68 (E.D. Ark. May 12, 2020) ("[S]ix lawyers and a law clerk" is excessive and "too much time was spent on conferences, meetings, call, and emails between lawyers.").

noted before, SLF certainly can engage in a "collaborative approach" involving constant oversight by a senior lawyer, but it cannot expect (nor should it ask) Defendant to pay for the practice, since it adds unnecessary hours to the bill.  Because no fee-paying client would compensate SLF for this practice, a defendant in a fee-shifting case should not be expected to either.

A review of the records reveals that associate Courtney Lowery was the lead lawyer on this case.  The random involvement of three other lawyers (and others that SLF did not include in its motion) and the constant involvement of the senior attorney were not reasonable.  At most, reasonable interoffice communication and oversight would be one hour. Accordingly, SLF is awarded only $250 (one hour at Mr. Sanford's rate) for oversight of the associate in this simple FLSA case.

There are other issues to address:

**Unsuccessful Issues** – SLF seeks compensation ($525) for work on a Motion to Recuse. However, the motion was not successful.  There also are entries for work involving recruiting additional plaintiffs, but there were no additional plaintiffs, so that too was unsuccessful.[17]

**Staff** – SLF billed 5.6 hours for clerical work performed by staff.  As mentioned above, reimbursement for clerical work is not allowed, so the fee must be reduced by $140.[18]

**Complaint –** Defendant notes that "two SLF lawyers spent a combined 3.9 hours drafting what amounts to a form complaint . . . [and] 'experienced' lawyers do not need to spend

---

[17]Doc. No. 18-1 at 10/28/20 and 10/29/20. Reduction of .2 hours x $100/ hour = $20

[18]5.6 hours x $25/hour = $140.

nearly four hours changing a caption, a few names, and a few case specific allegations."[19]  I agree.  An hour is reasonable.

**Motion for Lawyers' Fees** – Defendant asserts that "SLF seeks to recover $455.00 for fees incurred by multiple lawyers to prepare its fee petition, which, like Plaintiff's complaint, is basically a 'plug in and play' document."[20]  I agree that this should not have taken 3.5 hours.  One hour for this work.

**Reviewing Own Filings** – At least twice, SLF billed to review its <u>own</u> filings.[21]  This would not be billed to a client, and it will not be billed to Defendant.

**Other Consideration** – This case was not complex.  It did not present difficult legal questions and SLF did not assert that the case took it attention away from other cases.  Plaintiff worked for Defendant for only 10 weeks at $10 an hour and claimed she was forced to work off-the-clock for at least 10 hours every week.[22]  Assuming those allegations to be true, the math was simple.

**Summary –** All of the mentioned billing issues (as well as some mentioned in Defendant's response that are not discussed in this Order) result in a fee petition that is excessive and unreliable.  "When a party submits a fee petition, it is not the 'opening bid in the quest for an

---

[19]Doc. No. 23 (quotations in original).

[20]Doc. No. 23.

[21]Mr. Sanford billed .1 hour for "examination of filed 26(f) report," and  .1 hour for "examination of filed case." Doc. No. 18-1 at 10/03/2019 and 1/6/2020.

[22]Doc. Nos. 23-2.

award.'"[23]  Numerous appellate courts have found that a court may deny a request in its entirety if the amount is "outrageously excessive."[24]  The rationale is:

> If . . . the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.  To discourage such greed a severe reaction is needful . . . .[25]

While the fee request in this case is not "outrageously excessive" regarding the total dollar-amount requested, the time spend on the case, versus the time a reasonable lawyer would have spent on the case, is excessive.  A reduction is necessary.

### C. Settlement Negotiations

On January 29, 2020, Plaintiff informed Defendant that she would not seek class certification and indicated that she "would like to discuss settlement on an individual basis if that is something [Defendant] is open to."[26]  Defendant offer to settle for $750.  Plaintiff responded, "It appears that settlement discussions at this point are premature. Let's table it and we will come back to this discussion hopefully when we have a more realistic view of the value of settlement."[27]  Defendant responded that it was unclear why the issue was premature and that Plaintiff could propose a counter-offer.  Plaintiff responded:

> I believe we won't get closer to settlement exchanging numbers as low as what you suggested, numbers that aren't grounded in data.

---

[23]*Clemens v. N.Y. Central Mutual Fire Ins. Co.*, 903 F.3d 396, 403 (3d Cir. 2018) (quoting *Fair Hous. Council of Greater Wash. v. Landow*, 999 F.2d 92, 97 (4th Cir. 1993)).

[24]*Id.* at 402-03 (3d Cir. 2018) (citing cases from 1st Cir; 4th Cir., 5th Cir., and 7th Cir.).

[25]*Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980).

[26]Doc. No. 23-1.

[27]*Id*.

> If you care to discuss settlement, please send us [Plaintiff's] time records and pay records, and we will make a demand that doesn't have any fluff in it; payment of our demand would allow your client to save money on attorney fees.[28]

Five weeks later, on March 5, 2020, Plaintiff demanded $3,240 for liability damages. It does not appear that this demand was based on actual records, since, according to SLF's billing records, no damages calculation was made until late July – four months later.

Additionally, Plaintiff eventually settled her claims for $350. According to Plaintiff's submission, she "is receiving 72% of the total damages she could have been awarded under the FLSA and AMWA."[29] So, after SLF actually investigated the claim, it learned that liability damages was $486.11, not $3,240. Yet, Plaintiff demanded $3,240 and stood firm, while simultaneously billing hours. Ultimately, Plaintiff recovered just over 10% of her original liability demand.

There also was an initial lawyers' fees demand of $6,000. However, SLF had performed less than $1,500 in work at the time it made the demand. According to SLF, this is a non-issue because a fees demand "higher than their billing at the time of the demand, [is] in reality . . . just how negotiations work; all adults know this."[30] I disagree. In what appears to be standard practice, SLF demanded an arbitrary and excessive lawyers' fee based only on the hope that Defendant blindly would pay it. When SLF made the demand, the fee had not been earned nor was it expected to be earned. Again, "FLSA cases are not conduits for funneling unearned fees into lawyers' pockets."[31] This is not the first time I have addressed this practice:

---

[28]*Id*.

[29]Doc. No. 14.

[30]Doc. No. 24.

[31]*Vines*, 2020 WL 3062384, at *9.

> It also troubles me that Plaintiff's lawyers, despite repeated scoldings, continue to make fees demands for work they have neither done nor intend to do. A reasonable fee is earned; it is not an arbitrary demand that you hope opposing counsel will pay without question. Once again, "[i]t appears to me that, from the beginning, Plaintiffs' lawyers determined the amount of fees they wanted in this case and pushed to get that amount." Notably, Plaintiffs' lawyers continued to do unnecessary work on the case while knowing that the only outstanding issue was the fees amount. The only explanation is their desire to get more fees. However, Defendants resisted, and the parties agreed to a reasonable fees amount, based on the record.[32]

Let me make this clear, it is inappropriate, in a fee-shifting case, for a lawyer to demand fees from the opposing party that the he/she did not earn or could not reasonably expect to earn when wrapping up the case after settlement.[33]

The unsupported liability demand and fees demands are not the only issues with the negotiations. SLF advised Defendant: "Given how tiny[34] our client's damages are, it makes sense to settle this early on. Our attorneys' fees can be resolved for $6,000.00, although that number is of course subject to increase if we aren't able to resolve this quickly."[35] Defendant countered with an offer of $1,000 (liability and fees) and noted that it would "at some point [it would] opt for the principle of the matter versus being economically strong-armed by the threat

---

[32] *Jones, et al. v. Burkhalter Technologies Inc, et al.*, No. 4:20-cv-00339-BRW, Doc. No. 13 (E.D. Ark. Oct. 23, 2020)(citing *Vines v. Wellspun*, No. 4:18-CV-00509, Doc. No. 85-1 (E.D. Ark. May 14, 2020)); *Burton v. Nilkanth Pizza, Inc et al.*, No. 4:19-cv-00307-BRW, Doc. No. 48 (E.D. Ark. Aug. 24, 2020) ("SLF told opposing counsel that 'we can put the fees to bed for $11k.' Defendants countered with $3,500 for fees and costs and SLF dropped its demand to $9,900. The problem is that SLF had performed just over $7,000 worth of work, and that amount included the higher billing rates and Mr. Sanford's hours of unnecessary oversight. Yet, once again, SLF demanded fees that were not earned and were not anticipated to be earned. This is unacceptable. ").

[33] *See* Comment 4 to Rule 1.5 of the Arkansas Rule of Professional Conduct provides that a lawyer "is obliged to return any unearned portion" of a fee.

[34] At this point, Plaintiff still was demanding $3,240 to settle.

[35] Doc. No. 23-2.

of being responsible for attorney's fees."[36]  Again (and contrary to 8th Circuit law),[37] SLF's settlement tactics involved (at least at the beginning) tying liability damages to lawyers' fees.  According to the correspondence, Defendant also viewed it this way.  After Defendant took exception to being "strong-armed by the threat of . . . attorney's fees," Plaintiff responded, "If you will agree to pay [Plaintiff] what she is owed ($3,240.00), we will agree to defer discussion of attorney fees -- we can either <u>negotiate separately</u> or file a motion if we need to.  This removes any 'threat' of attorney fees and will hopefully allow all parties to focus on Ms. [Plaintiff's] damages."[38]  Obviously, up to that point, liability and lawyers fees were <u>not</u> being negotiated separately.

Although I am required to award a fee,[39] the amount of the award is at my discretion.[40]  Excluding Plaintiff's unsuccessful issues and the excessive time on the complaint and motion for fees, Plaintiff's lead lawyer performed around 11 hours of work on this case.  At her hourly rate,

---

[36]*Id.*

[37]*Vines v. Welspun Pipes, Inc.*, No. 4:18-CV-00509-BRW, 2020 WL 3062384, at *10 (E.D. Ark. June 9, 2020) (citing *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, n.2  (8th Cir. 2019) Barbee cautioned against this very practice by requiring fees and liability to be negotiated separately. .

[38]Doc. No. 23-2 (emphasis added).

[39]Some courts have found that there are exceptions to the mandatory fee.  See *Sahyers v. Prugh, Holliday & Karatinos*, 560 F.3d 1241 (11th Cir. 2009) (finding no abuse of discretion by the district court in denying by denying lawyers' fees to a prevailing FLSA plaintiff); *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003) (denying fees to a prevailing FLSA plaintiff because "[t]here are 'special circumstances' that can render such an award of attorney's fees unjust, and so-called nuisance settlements represent such a circumstance" ).

[40]*Fires v. Heber Springs Sch. Dist.*, 2014 WL 2441955 at *2 (8th Cir. June 2, 2014) (reviewing district court's decision to classify hours as excessive for abuse of discretion and "giving due deference to the district court's unique understanding of the legal and factual issues implicated by this matter and counsel's handling of them").

the result is $1,100 in lawyers' fees. Add Mr. Sanford's one hour of oversight to that amount, and the total is $1350. Typically, that would be reasonable amount of time. However, some of the additional work was the result of SLF playing hardball on an unsupported liability damage demand (since SLF had not even calculated damages when it made its demand) and an arbitrary lawyers' fees demand – while continuing to bill for unnecessary work. A reasonable attorney would review the clients's documentation, do the math, and demand a settlement based on what it could prove. Instead, SLF made an unsupported demand, and billed while the parties talked settlement over the course of a few months. Ultimately, as mentioned above, Plaintiff received just over 10% of her original demand – "72% of the total damages she could have been awarded." Meanwhile, SLF drummed up (after a self-audit) nearly $4,500 in fees. Accordingly, a 20% overall reduction is necessary. The result is fees of $1080.

### D. Costs

SLF asserts that it incurred $450 in costs, which was the filing fee and the cost of the process server. Defendant does not object to this request, so that amount will be awarded.

### CONCLUSION

Based on the above reasons, Plaintiff's Motion to Approve Attorney Fees (Doc. No. 18) is GRANTED IN PART and DENIED IN PART. SLF is entitled to $1,080 in lawyers' fees and $450 in costs from Defendant.

IT IS SO ORDERED this 16th day of December, 2020.

Billy Roy Wilson<br>
UNITED STATES DISTRICT JUDGE